# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Wilbert Glover, | Civ. No. 19-304 (NEB/BRT) |
| Plaintiff, | |
| v. | |
| Richard Rodriguez, Alberts Ross,[1] R. Paul #705, Matt Bostrom, Greg Croucher, Joe Paget, Tom Roy, Officer Hendrikt, and the Minnesota Department of Corrections,[2] | **REPORT AND RECOMMENDATION** |
| Defendants. | |

Wilbert Glover, *pro se* Plaintiff.

Robert B. Roche, Ramsey County Attorney's Office, St. Paul, MN 55101, for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

*Pro se* Plaintiff Wilbert Glover brings federal and state law claims related to his allegations that on at least four separate occasions he was sexually abused while detained at the Ramsey County Adult Detention Center ("ADC"). Plaintiff also makes related

---

[1]    The docket lists this party as "Alberts Ross," but the parties refer to him variably as Officer Ross, Alberts Ross, Defendant Ross, and Ross Alberts. The Court will assume arguendo that all references are to a single individual, and this individual will be referred to as "Defendant Ross" consistent with the master caption.

[2]    Defendant Greg Croucher's Motion to Dismiss (Doc. No. 24) was granted on December 18, 2019. (Doc. No. 38.) Defendants Tom Roy and the Minnesota Department of Corrections were dismissed from the case upon initial review. (Doc. No. 14.)

claims concerning the lack of medical or mental health care he received. The Defendants Richard Rodriguez, Alberts Ross, R. Paul, Matt Bostrom, Joe Paget, and Officer Hendrikt ("the Ramsey County Defendants") filed a Motion for Summary Judgment. (Doc. No. 43.) For the reasons that follow, this Court recommends that the Motion for Summary Judgment be granted in part and denied in part.

## I.    Procedural History

On November 1, 2018, Plaintiff initiated this action by filing a *pro se* Complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) At the Court's direction, Officer Hendrikt was added to the caption of the docket to clarify his status as a Defendant, and the Complaint was reviewed for clarity. (Doc. Nos. 3, 4.) Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP") (Doc. No. 2), which was granted after he paid an initial partial filing fee. (Doc. Nos. 6, 9.) Upon receipt of the filing fee, this Court conducted an initial review of the Complaint pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A. (Doc. No. 10.)

On May 20, 2019, summonses were issued to the Ramsey County Defendants. (Doc. No. 11.) Waivers of service were returned executed by four of the six Ramsey County Defendants—Bostrom, Paget, Paul, and Rodriguez—on July 2, 2019. (Doc. Nos. 18, 19.) These four defendants filed an Answer on July 22, 2019. (Doc. No. 22, Answer.) Although the attorneys appearing for the Ramsey County Defendants did not return the summonses for Defendants Hendrikt or Ross, they stated in the Answer that they "deny that the Ramsey County Sheriff's Office employs an Officer Hendrikt . . . and [f]urther deny that Albert Ross is a current Ramsey County employee." (*Id.* ¶ 5.) Plaintiff

filed an Objection (Doc. No. 23) and an Exhibit (Doc. No. 30), both apparently in response to the Answer. In the latter filing, Plaintiff included a "Current/Previous" cell log from the ADC that lists Officer Hendrikt's name, as well as a handwritten grievance wherein Plaintiff complained of Hendrikt's sexually abusive conduct. (Doc. No. 30 at 1, 2.) The docket sheet reflects no further efforts to serve Officers Hendrikt or Ross.

On May 8, 2020, counsel for the Ramsey County Defendants entered a second notice of appearance wherein he added Defendants Hendrikt and Ross but reserved the right to contest jurisdiction over them and their employment status. (Doc. No. 42.) All six Ramsey County Defendants then moved for summary judgment. (Doc. Nos. 43, 45.) In support of their Motion for Summary Judgment, the Ramsey County Defendants attached their February 10, 2020 RFAs, which are the sole factual support for their motion. (*See* Doc. No. 46, Roche Aff., Ex. A.)

In response to the Motion for Summary Judgment, Plaintiff filed two "Productions of Documents" and one "Exhibit." (Doc. Nos. 49, 50, 53.) Those submissions contain documents appearing to support his claim that he interacted with Defendants Hendrikt and Ross at the ADC, as well as a compilation of previously submitted exhibits concerning his interactions with the remaining Ramsey County Defendants. The Ramsey County Defendants filed a Reply brief on June 22, 2020. (Doc. No. 54.) The matter is now fully briefed and ready for this Court's consideration.

## II.    Plaintiff's Allegations[3]

Plaintiff alleges that during his time at the Ramsey County ADC, he was sexually assaulted on multiple occasions by different officials in the course of strip searches. First, on December 30, 2015, around 10:00 a.m., Plaintiff alleges that Defendant Paul made Plaintiff take off his jumpsuit and then "grasp[ed] [Plaintiff's] penis squeeze it hard and gestures." (Doc. No. 4, Compl. 6.) Plaintiff alleges that he subsequently filed kites regarding that incident beginning on January 4, 2016, but never received a response from Defendants Rodriguez or Bostrom. (*Id.* ¶ A.) Plaintiff attached a signed grievance about this incident wherein he explicitly alleges that Defendant Paul physically assaulted him. (Doc. No. 4-1 at 1.) Plaintiff alleges that Defendant Rodriguez was the head of housing, and that he knew about the incident. (Compl. ¶ A.)

Plaintiff alleges that the second assault occurred on January 19, 2016, around 4:45 p.m., when Defendant Hendrikt returned Plaintiff to his cell after court. (*Id.* ¶ B.) Plaintiff alleges that Defendant Hendrikt called him "Wilbert Nigger" and strip-searched him outside of his cell. (*Id.*) During the search, Defendant Hendrikt allegedly "kept his hand down there on [Plaintiff's] penis and stated, 'it's big one.'" (*Id.*) Plaintiff characterized this as inappropriate sexual harassment. (*Id.*) Plaintiff also attached two grievances about the January 19 incident. Therein, Plaintiff wrote that "[a]fter coming from court this white officer call my name by Wilbert Nigger he search me outside of my cell 519D feel

---

[3]    The allegations set forth here include material from Plaintiff's written narrative in his sworn Complaint, as well as attached exhibits which Plaintiff had originally interspersed between the narrative paragraphs.

4

on my penis and balls and said it's big one. His conduct is inappropriate sexual harass me this same officer was bother me behind glass." (Doc. No. 4-1 at 2.) The second grievance identifies the "white officer" as Defendant Hendrikt. (Doc. No. 4-1 at 10.) Both grievances were signed by Plaintiff. Plaintiff alleges that he sought help from Defendant Rodriguez but got no response. (Compl. ¶ B.)

Plaintiff alleges that beginning in February of 2016, he lodged request forms to see a case worker or mental health staff worker about the emotional impacts of the alleged sexual abuse. (*Id.* ¶ C-A.) Plaintiff further alleges that he sent follow-up requests for mental health care on February 22, 2016, May 15, 2016, and August 4, 2016, but received no response, and speculates that the lack of assistance may have been retaliation for filing past grievances. (*Id.* ¶ H.) Plaintiff also alleges that in March and May of 2016, he filed emergency grievances and sought Defendant Rodriguez's help to no avail. (*Id.* ¶¶ C-A, C-B.) Plaintiff alleges that in May 2016, he continued to seek mental health care, but received no assistance. (*Id.* ¶ D.) He alleges that this lack of mental health care constituted deliberate indifference in violation of the Eighth Amendment because it jeopardized his health and safety. (*Id.*)

Plaintiff alleges that the third incident of harassment occurred on May 22, 2016. (*Id.* ¶ E.) He claims that he filled out an internal affairs complaint form detailing this "specific sexual abuse and sexual harassment voyeurism" incident but did not get a response of any type. (*Id.*) Plaintiff attached an internal affairs statement dated May 24, 2016, wherein he wrote:

> On May 22, 2016, segregation unit 5D 619 cel. Sheriff Officer Albert Ross him and another Sheriff #649 strip search me told me to ben over took his hand and touch my ass buttox told me to make my ass hold move then touch my ass hold with his finger I move away back from them both they grad me through me down and punch me in my balls grad my ass and punch me again then one of them pull on my penis it all happen about 20 min this day I filed grievances I wrote to health care, I told sergeant Richard Rodriguez what had happen and wrote to Sheriff Matt Bostrom this is second internal affairs statement these sheriff have sexual harass abuse me I have not receive none of my grievances back pink copy about this create a severe perverse environment voyeurism by these sheriff I need your 'help please' internal affairs this copy I sent to Ramsey County Sheriff Manager's Office for help[.]

(Doc. No. 4-1 at 12.)

Plaintiff claims that on June 24, 2016, he submitted an emergency grievance appeal about his interactions with Defendants Paul, Ross, and Rodriguez in relation to sexual harassment on December 30, 2015, January 19, 2016, and May 22, 2016. (Compl. ¶ F.) In the same paragraph of the Complaint, Plaintiff alleges that Defendant Bostrom was aware of the sexual abuse and harassment and failed to take any action. (*Id.*) Plaintiff claims that a subsequent emergency grievance went unanswered by Defendants Bostrom and Paget on July 4, 2016. (*Id.* ¶ G.) He further alleges that on September 4, 2016, Defendant Paget ignored a request form for a grievance. (*Id.* ¶ I.)

Plaintiff alleges that on September 28, 2016, he again filed an emergency grievance to Defendant Bostrom and others identified by badge number. (*Id.* ¶ K.) Plaintiff alleges that he was subject to improper harassment or voyeurism because "Sheriff Officer #1001" said to him "dick need to be cut off as is." (*Id.*) Plaintiff received no response to this grievance. (*Id.*) He alleges he filed an additional grievance that was

rejected on October 4, 2016, claiming an unidentified sheriff's officer said, "this boy has a lot of hair in the crack of his ass." (*Id.* ¶ L.)

Plaintiff alleges that on October 25, 2016, he filed an emergency grievance appeal and received a response saying he "may need help or guidance." (*Id.* ¶ M.) However, he alleges that despite Defendants Bostrom, Rodriguez, and Ross processing the grievance, he never got any help. (*Id.*) In the final narrative paragraph of his Complaint, Plaintiff states that he did not receive any mental or psychological assistance despite multiple requests for it. (*Id.* ¶¶ N(1)-N(2).)

In support of his Complaint and further pleadings, Plaintiff submitted numerous exhibits in the form of grievances (both his own and those of others), excerpts of jail policy, health care request forms, and other correspondence. (*See generally* Doc. No. 4-1.) Many of these documents were resubmitted throughout the life of the case as "Productions of Documents." (*See, e.g.*, Doc. Nos. 39, 40, 53-1.) These documents include a grievance alleging that on December 7, 2016, Plaintiff was again sexually harassed by touching and misconduct when he returned from court and was strip searched. (Doc. No. 4-1 at 31.) That grievance does not identify an assailant by name, but represents the fourth incident of direct physical assault described in Plaintiff's Complaint.

After the Ramsey County Defendants filed their Answer, Plaintiff filed copies of a "cell transfer log" listing Defendant Hendrikt as an officer who interacted with Plaintiff on January 19, 2016. (Doc. No. 30 at 1.) He also included a grievance that he submitted on May 4, 2016, identifying Defendant Hendrikt by name. (*Id.* at 2.) In response to the Ramsey County Defendants' Motion for Summary Judgment, Plaintiff also submitted an

"incident report" authored by Defendant Ross wherein he discusses his role as a classifications officer who helped with Plaintiff's initial intake at the Ramsey County ADC on November 28, 2015. (Doc. No. 50 at 4.)

Plaintiff seeks $4,700,000.00 in damages. (Doc. No. 4 at 27.)

## III.    The Ramsey County Defendants' RFAs

On February 10, 2020, the Defendants served Plaintiff with Requests for Admission ("RFAs"). The RFAs included a one-paragraph summery of Federal Rule of Civil Procedure 36.[4] (Doc. No. 46-1 at 1, Roche Aff., Ex. A.) The Ramsey County Defendants claim that Plaintiff failed to respond to their RFAs and thus has admitted all of the facts asserted therein. (Mem. in Supp. 2–3.) In relevant part, the RFAs request that Plaintiff admit (1) Plaintiff failed to serve process on Defendant Ross (Doc. No. 46, Roche Aff., Ex. A ¶ 1); (2) Plaintiff failed to serve process on Defendant Hendrikt, failed to identify Officer Hendrikt, and that there was no officer named Hendrikt on staff at the Ramsey County ADC during the time frame referenced in Plaintiff's Complaint (*id.* ¶¶ 2–4); (3) Defendants Bostrom, Paget, and Rodriguez neither witnessed nor personally participated in any of the alleged conduct referenced in the Complaint (*id.* ¶¶ 5–10); (4) any physical contact Ramsey County staff may have had with Plaintiff's body was for legitimate security concerns and not for any improper purpose (*id.* ¶¶ 11–13); and (5) Plaintiff received prompt and adequate medical and mental health care while he was in

---

[4]    The adequacy of Defendants notice is not at issue in this Report and Recommendation.

custody at the ADC (*id.* ¶ 14). The RFAs were served on Plaintiff on February 10, 2020.

Again, Defendant alleges that no response was ever received. (Roche Aff. ¶¶ 2, 4, Ex. A.)

## IV.    Analysis

Plaintiff's Complaint asserts four "Counts" against the Ramsey County

Defendants:

> **Count One**: In violation of 42 U.S.C. § 1997 B.2 B.3 pretrial detention facility—personal code conduct of employees in their personal capa[c]ities.
>
> **Count Two**: Retaliation in violation of the civil rights act of 1991 42 U.S.C. and 1981 42 U.S.C. A, C. Policy 103.220 defendants personal capa[c]ities and official capa[c]ities.
>
> **Count Three**: 42 U.S.C. Code § 1983 and violation of Minnesota statutes § 363A.12, subd 1 Human Rights Act—in their personal capa[c]ities their official capa[c]ities.
>
> **Count Four**: Minn. Stat. § 15.86, 43A.38, 24.01 and 15.43 Prison Rape Elimination Act[5] PREA 28 C.F.R. § 115—Policy 103.220 D.2. both official and personal capa[c]ities.

(Compl. 25.) This Court observes that the gravamen of Plaintiff's Complaint is the sexual

harassment he allegedly endured at the ADC, including four incidents of alleged sexual

assault. Accordingly, because Plaintiff is proceeding *pro se*, this Court liberally construes

Count Three, which includes Plaintiff's § 1983 claims, as encompassing both a

conditions-of-confinement claim as well as a deliberate indifference to medical needs

claim under the Eighth Amendment. Plaintiff also discusses retaliation and equal

---

[5]    Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 *et seq.* (2000 ed., Supp. III).

protection in the text of his Complaint, so this Court will construe these as Counts Five and Six, respectively. (*Id.* ¶¶ H, J.)

The Ramsey County Defendants argue that they are entitled to summary judgment on behalf of all Defendants because (1) Plaintiff failed to respond to their RFAs, and thus all the facts asserted therein are admitted; (2) Plaintiff failed to effect proper service of process on Defendants Ross and Hendrikt; (3) the individually named Defendants are entitled to qualified immunity; (4) Plaintiff's deliberate indifference claim fails as a matter of law; and (5) Plaintiff's claim against Ramsey County fails because he identifies no allegedly unconstitutional custom, practice, or policy. (*See generally* Mem. in Supp.) The Ramsey County Defendants do not acknowledge Plaintiff's claims under 42 U.S.C. §§ 1981 or 1997, the Prison Rape Elimination Act, Policy 103.220, retaliation, equal protection, or Plaintiff's state law claims.

For the reasons that follow, this Court recommends that the Motion for Summary Judgment be granted in part and denied in part.

### A.    Standard of Review

Summary judgment is appropriate if, "after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) (quotation omitted). In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are

jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A disputed fact is material when its resolution "might affect the outcome of the suit under the governing law," and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001) (quotations omitted). If it does so, the non-moving party may not rest on mere allegations or denials, but must point to evidence of "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see also* Fed. R. Civ. P. 56(c)(1). Conclusory assertions, standing alone, are not enough to create a genuine issue of material fact. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 820 (8th Cir. 2011). Where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

When deciding a summary-judgment motion, courts liberally construe pro se pleadings and hold them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a pro se plaintiff's claims cannot survive a summary-judgment motion unless he has set forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). In the specific context of prisoner litigation, the Eighth

Circuit stated in *Watson v. Jones*, 980 F.2d 1165, 1166 (8th Cir. 1992), that "[p]laintiffs' verified complaint is the equivalent of an affidavit for the purpose of summary judgment."

**B.    Plaintiff's Alleged Failure to Respond to the RFAs**

This Court first examines the Ramsey County Defendants' argument that Plaintiff failed to respond to the RFAs and that Plaintiff's alleged failure to do so results in a binding admission of facts sufficient to grant summary judgment in Defendant's favor.

Requests for Admission pursuant to Rule 36 are intended as a mechanism to establish basic facts and propositions in a case. Rule 36 provides in relevant part that:

(a) Scope and Procedure.

   (1) *Scope.* A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:

      (A) facts, the application of law to fact, or opinions about either; and

      (B) the genuineness of any described documents.

…

(b) Effect of an Admission; Withdrawing or Amending it. A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

Fed. R. Civ. P. 36. Under Rule 36(a)(3), a party is required to respond to admissions within thirty days.

Defendants claim that Plaintiff failed to respond to the February 10, 2020 RFAs within thirty days after they were served. Here, however, Plaintiff—who is pro se and not legally sophisticated—appears to have attempted to respond to the RFAs by filing a handwritten summary along with documents on February 25, 2020. (Doc. Nos. 39–41.) Each of those filings is titled "Production of Documents" and contains various items related to Plaintiff's claims, including copies of grievances, statements from other prisoners, and a jail cell log identifying an officer named "Hendrikt." (Doc. No. 39 at 4; Doc. No. 41 at 9.) The handwritten notes reallege facts from Plaintiff's Complaint and, on at least one occasion, appears to refer directly to the RFAs: "[T]he defendant counsel Robert Roche is deny[ing] that Ramsey County Sheriff's Office employs an Officer Hendrikt evidence showed in document Hendrikt is an officer." (Doc. No. 41 at 5.)

There are other links between the subjects of Defendant's RFAs and Plaintiff's subsequent filings on February 25, 2020. For example, the RFAs ask Plaintiff to admit that "there was no officer named Hendrikt on staff at the Ramsey County ADC during the timeframe set forth in your Complaint." (Roche Aff., Ex. A at 3 ¶ 4.) In one of Plaintiff's February 25 filings, he writes, "on January 19, 2016 Sheriff Officer Hendrikt move me to a different cell gra[b] my penis squeezed it hard and made gestures paper attached." (Doc. No. 39 at 3). The RFAs also call for an admission that any contact with his body on December 30, 2015, was for legitimate security purposes (Roche Aff., Ex. A at 4 ¶ 11), but Plaintiff explicitly writes in a February 25 filing that on December 30, Defendant R. Paul "touched and fuddled" with his genitals. (Doc. No. 39 at 3.) In that same filing, Plaintiff wrote that Defendant Ross sexually harassed him on May 22, 2016 (*id.* at 5),

directly contradicting Defendants' request that he admit that any touching on May 22, 2016, was for legitimate security purposes. (Roche Aff., Ex. A at 4 ¶ 13.) Based on their context[6] and content, the February 25, 2020 filings appear to be an attempt by Plaintiff to respond to the RFAs.

Courts have found it proper to credit attempted responses when considering the timeliness or impact of admissions. *See Oliver v. Gaston*, No. CIV.A. 104CV499LGJMR, 2006 WL 2805343 (S.D. Miss. Sept. 7, 2006). In *Oliver,* a pro se prison plaintiff mailed his responses to RFAs to the court, and the responses were returned to him as improperly transmitted to the court. *Id.* at *7. The defendant later became aware that the plaintiff had attempted to send responses to the court and attempted to get the responses directly from the plaintiff, but to no avail. *Id.* Ultimately, the defendant moved for summary judgment. The *Oliver* court noted that the case turned on a factual dispute between the pro se prison plaintiff and the guard who allegedly beat him. *Id.* at *5. That court refused to deem the

---

[6]    The context of these filings is important. All three February 25, 2020 filings came to the Court unsolicited, at a time when there was no other reason to file any documents based on the existing Pretrial Order. (*See* Doc. No. 21, Pretrial Ord. 1–2.) A review of the docket suggests that Plaintiff was not in the habit of sending documents to the Court unless he believed he was required to take action in response to something the Defendants had filed. For example, when the Defendants filed an Answer to the Complaint, Plaintiff filed documents objecting to aspects of the Answer (Doc. Nos. 23, 30). Additionally, when a Defendant moved for dismissal (Doc. Nos. 24, 25), Plaintiff waited until the Court issued a briefing schedule on the motion before he filed two "production of documents," a "memorandum of law" and an exhibit in opposition to the motion to dismiss. (Doc. Nos. 21–35.) Plaintiff also filed several responsive documents with the Court once Defendants' Motion for Summary Judgment had been filed. (Doc. Nos. 49–51, 52–53.) While Plaintiff's February 25th filings were technically and procedurally flawed, their context supports the conclusion that the February 25, 2020 filings were an attempt to respond to the RFAs.

RFAs admitted because "the record [did] not indicate that [plaintiff] deliberately and selectively chose to disregard certain deadlines." *Id. at* *9. The court reasoned that *Oliver* was distinguishable from cases where RFAs *were* deemed admitted because the plaintiff had attempted to send responses to the RFAs to the court and because he responded to summary judgment. *Id.* at *7–9.

This Court finds the rationale set forth in *Oliver* instructive. Unlike a plaintiff who sat passively or ignored a duty to respond, Plaintiff appears to have responded, albeit improperly, to the RFAs via his February 25, 2020 filings. (Doc. Nos. 39–41.) Accordingly, this Court finds that the RFAs should not be deemed admitted for failure to respond for the purposes of a dispositive decision on summary judgment.

Further, even if Plaintiff's February 25, 2020 filings are not construed as a response, Rule 36 should still not be used to answer questions of law or to establish facts that are obviously in dispute. *See Lakehead Pipe Line C. v. American Home Assur. Co.*, 177 F.R.D. 454 (D. Minn. 1997). In *Lakehead Pipe*, the court noted that "requests for admission are not to be employed as a means 'to establish facts which are obviously in dispute or to answer questions of law.'" *Id.* at 458 (citing *Kosta v. Connolly*, 709 F. Supp. 592, 594–95 (E.D. Pa. 1989); *Driver v. Gindy Mfg. Corp.*, 24 F.R.D. 473, 475 (E.D. Pa. 1959) ("If a real dispute as to the fact does exist, Rule 36 may not be used.")). The court further stated, "the quintessential function of Requests for Admission is to allow for the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum to provide notification as to those facts, or opinions, that remain in dispute." *Id.* at 457.

Other courts around the country have taken a similar approach to RFAs. For example, the Eastern District of California applied *Lakehead Pipe*'s analysis of the role of RFAs to summary judgment, finding that:

> [R]equests for admissions should not be used to establish "facts which are obviously in dispute," *Lakehead Pipe Line Co. v. American Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997), to "demand that the other party admit the truth of a legal conclusion," even if the conclusion is "attached to operative facts," or to ask the party to admit facts of which he or she has no special knowledge. *Disability Rights Council v. Wash. Metro. Area*, 234 F.R.D. 1, 3 (D.C. Cir. 2006).
>
> Defendant Lipton's requests ask plaintiff to admit: (1) he has no facts to support his claim that Lipton violated his rights under the Eighth Amendment; (2) Lipton did not violate any of plaintiff's constitutional rights; (3) Lipton did not subject plaintiff to excessive force; (4) plaintiff suffered no injury as a result of the defendant Lipton's actions; and (5) Lipton was not deliberately indifferent to plaintiff's medical needs . . . .
>
> These requests for admissions grossly violate the strictures that such requests not seek to establish facts in obvious dispute and not demand the opposite party admit the truth of a legal conclusion. For that reason alone they are not effective concessions of any legal or factual issue in this case, and the court will not accept them as a basis for summary judgment.

*Jones v. McGuire*, No. 2:08-CV-2607 MCE CKD, 2012 WL 2376290, *1, at *6–7, (E.D. Cal. June 22, 2012), *report and recommendation adopted*, No. 2:08-CV-2607 MCE CKD, 2012 WL 4344539 (E.D. Cal. Sept. 21, 2012) ; *see also Kosta*, 709 F. Supp. at 594–95 (stating that where plaintiffs' guilt was central to the case, defendants could not use Rule 36 to deem RFA asking whether plaintiffs violated the relevant statute admitted); *United States v. Turk*, 139 F.R.D. 615, 617–18 (D. Md. 1991) (declining to deem facts central to the case admitted due to pro se plaintiff's failure to respond to RFAs, and observing that the sanctions prescribed in Rule 36 are not mandatory).

Here, at least the first two RFAs asking Plaintiff to make admissions regarding legal service are inappropriate because they seek admissions of law. *See Lakehead Pipe*, 177 FRD at 458 ("[R]equests for admissions of law which are related to the facts of the case, are considered to be inappropriate."). In addition, the RFAs repeatedly ask Plaintiff to admit facts that are clearly disputed. For example, the RFAs include three identical statements requesting that Plaintiff admit "that any physical contact the Ramsey County staff may have made to any part of your body on [December 30, 2015, January 19, 2016, and May 22, 2016] was for legitimate security reasons and not for any improper purpose." (Roche Aff., Ex. A ¶¶ 11–13.) Another asks that Plaintiff "admit that [he] received prompt and adequate medical and mental health care while [he was] in custody at the Ramsey County Adult Detention Center." (*Id.* ¶ 14.) RFAs are not intended as a tool to establish facts that are obviously in dispute or to answer questions of law, such as whether contact between Plaintiff and the named Defendants during a strip search was "legitimate" rather than sexual assault, or whether Plaintiff received prompt and adequate medical care during his time in the ADC. (*See* Roche Aff., Ex. A ¶¶ 11–14.) If Plaintiff's failure to properly respond to these RFAs was construed as a blanket admission of the RFAs' contents, Plaintiff would effectively concede that no violations of his constitutional rights occurred; clearly, that it not his position, and Rule 36 is not intended to make it so.

Plaintiff's filings in opposition to the Answer, his February 25, 2020 filings, and his opposition to the Motion for Summary Judgment set forth Plaintiff's version of disputed material facts. This weighs against granting summary judgment based on the

RFAs. *See, e.g.*, *United States v. Renfrow*, 612 F. Supp. 2d 677, 682–83 (E.D.N.C. 2009)

(collecting cases wherein courts were reluctant to award summary judgment on the basis

of a pro se party's default on RFAs because such a party may not have understood the

effect of the failure to respond to the requests, and distinguishing such a scenario from

one where a pro se plaintiff was a sophisticated litigant and the summary-judgment

motion was not based solely on RFAs, but also on significant undisputed evidence);

*Diggs v. Keller*, 181 F.R.D. 468, 469 (D. Nev. 1998) (stating that RFAs should not be

used "as a snare which prevents pro se prisoners from opposing summary judgment").

Therefore, this Court does not recommend summary judgment be granted in Defendants'

favor based on Plaintiff's alleged failure to respond to the RFAs.[7]

---

[7]    The cases Defendants cite in support of the proposition that summary judgment
can be granted on RFAs deemed admitted for a failure to respond are either not
instructive or are irrelevant. For example, in *Quasius v. Schwan Food Co.*, plaintiff, who
was represented by counsel, failed to respond to RFAs, and then additionally failed to
withdraw those RFAs deemed admitted even after being given a 30-day extension. 596
F.3d 947, 950–51 (8th Cir. 2010). Here, however, Plaintiff does not enjoy the benefit of
counsel, and has not been granted any extensions. In *Miller v. Stifel, Nicolaus & Co.*, the
plaintiff, a financial advisor, filed suit pro se against her employer alleging discrimination
and retaliation. 812 F. Supp. 2d 975, 993–94 (D. Minn. 2013). The plaintiff did not
respond to RFAs tailored consistent with the purposes of Rule 36 concerning her
commission payments, bonus payments, and wages, and the court deemed those RFAs
admitted. Here, however, Plaintiff *did* respond, albeit improperly, via his February 25,
2020 filings. Moreover, in *Miller*, the court observed that the plaintiff "presented no
evidence or argument in support of her claim." *Id.* at 994. Here, Plaintiff has repeatedly
asserted his version of the facts. In *Luick v. Graybar Elec. Co.*, 473 F.2d 1360 (8th Cir.
1973), the Eighth Circuit reversed a grant of summary judgment based solely on RFAs
because the RFAs only covered some, but not all material issues of a case, and thus the
court found that summary judgment was premature. If anything, *Luick* weighs in favor of
denying summary judgment because the RFAs in this case do not conclusively dispose of
contested issues. Finally, the Defendants cite *Fisherman v. Schaefer*, No. 17-cv-3766,
2019 WL 1086390, at *1 (D. Minn. 2019), a case from this District, which they allege
concluded that "summary judgment [was] warranted on *pro se* inmate's civil rights

### C.    Service on Defendants Hendrikt and Ross

This Court next addresses the Ramsey County Defendants' argument concerning lack of service on Defendants Hendrikt and Ross. The Ramsey County Defendants assert that Hendrikt and Ross have not been properly served nor were they employees at the ADC during the time referenced in Plaintiff's Complaint. (Mem. in Supp. 5–6.) The Ramsey County Defendants rely entirely on Fed. R. Civ. P. 4(m) to support their argument that summary judgment should be granted in favor of Defendants Hendrikt and Ross. Rule 4(m) provides that –

> if a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Fed. R. Civ. P. 4(m). The Rule further allows for an extension of the 120-day period for good cause. (*Id.*)

A district court may extend the time for service on its own even if a plaintiff fails to show good cause, rather than dismiss the case without prejudice. *Kurka v. Iowa*

---

claims based on facts deemed admitted where inmate failed to timely respond to requests for admission." (Doc. No. 45, Defs.' Mem. at 5.) Summary judgment was granted in the *Fisherman* case because the pro se plaintiff only named the defendant in his official capacity. 2019 WL 1086390 at *3. The *Fisherman* court discussed RFAs as an alternative holding, but in doing so it specifically noted that the plaintiff also failed to respond to summary judgment, so the facts could be deemed admitted either under Rule 36 or Federal Rule of Civil Procedure 56(e), and the particular plaintiff was a seasoned *pro se* litigant who had seen a prior matter dismissed for failure to respond to summary judgment. The discussion of RFAs in *Fisherman* was a warning to a repeat pro se litigant that in the future, he could face dismissal for a failure to respond to RFAs, rather than a finding that summary judgment was granted on that basis.

*County, Iowa*, 628 F.3d 953, 957 (8th Cir. 2010). Moreover, the Eighth Circuit has reversed the dismissal of a pro se litigant's case for lack of service of process when the pro se litigant took the necessary steps by supplying the district court with service information for the defendants and it was unclear from the record why the court or the Marshals Service failed to effectuate service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783–84 (8th Cir. 2013).

Here, Plaintiff took the proper steps as an incarcerated pro se litigant to effectuate service. He was required to submit a Marshals Service Form for each Defendant. (Doc. No. 9.) Plaintiff did so, and summonses issued to all seven Defendants that were parties. (Doc. No. 11.) Although the Ramsey County Defendants only returned summons as to five of the seven Defendants, this was not Plaintiff's fault. Once the Defendants answered the Complaint and indicated that they did not believe Defendants Hendrikt or Ross worked for Ramsey County during the time in question (Doc. No. 22 at ¶ 5), Plaintiff attempted to establish that the two were so employed by sending documents such as a jail-cell log with Defendant Hendrikt's name on it (Doc. No. 30 at 1), and an incident report featuring Defendant Ross's name (Doc. No. 50 at 4). The existence of these documents raises the possibility that contrary to the Ramsey County Defendants' representations, Defendants Hendrikt and Ross did indeed work at the ADC, and had contact with Plaintiff, during the period relevant to this lawsuit.[8]

---

[8]    The Ramsey County Defendants do not challenge the authenticity of these documents, but they do attack them as "inadmissible hearsay" regarding their value at summary judgment. (Reply 4, 6–7.)

Plaintiff's situation here is analogous to the facts discussed in *Wright* because Plaintiff tendered the appropriate service information to the Court, and either the Court or the Marshals Service failed to fully effectuate service on Defendants Hendrikt and Ross. *Wright*, 710 F.3d at 783–84. Plaintiff should not now have his potential claims against those parties thrown out because there was a breakdown in service procedures over which he had no control. Therefore, this Court recommends that the Defendants' Motion for Summary Judgment be denied as it pertains to service on Defendants Hendrikt and Ross under Rule 4(m), and that the Marshals Service be directed to undertake thorough service efforts to locate and tender service of process on them as soon as practicable.

### D.    Qualified Immunity

This Court now turns to the Ramsey County Defendants' argument that Plaintiff's claims should be dismissed against the named Defendants in their individual capacities because (1) Defendants Rodriguez, Bostrom, and Paget ("the Supervisory Defendants") did not witness or participate in the conduct alleged in the Complaint; and (2) any contact between Defendants and Plaintiff was for legitimate security reasons and not for any improper purpose. (Mem. in Supp. 9–11.) In making this argument, the Ramsey County Defendants rely again wholly on their RFAs. Accordingly, because this Court has already found that the RFAs should not be deemed admitted, the Ramsey County Defendants' argument as to qualified immunity fails. This Court therefore recommends that summary judgment on the grounds of qualified immunity be denied without prejudice.

### E.    Deliberate Indifference

The Ramsey County Defendants also argue that Plaintiff's claim for deliberate indifference to a serious medical need, which is predicated on the Ramsey County Defendants' alleged failure to provide him with mental-health care, fails as a matter of law. (Mem. in Supp. 11.) Specifically, the Ramsey County Defendants argue that Plaintiff failed to plead sufficient facts to support such a claim, and that Plaintiff's failure to respond to the RFAs requires a finding that he admitted that he received prompt and adequate medical care while at the ADC. (*Id.* at 12–13.) Since the Court has already recommended rejecting summary judgment based on the RFAs, the Ramsey County Defendants argument based on that necessarily fails. But this Court also finds that their argument that Plaintiff failed to plead a claim for deliberate indifference is also unavailing.

Constitutional claims of deliberate indifference to a pre-trial detainee's medical needs are analyzed under the same Eighth Amendment deliberate-indifference standard applicable to claims of prison inmates. *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *accord Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014); *Vaughn v. Gray*, 557 F.3d 904, 908 n.4 (8th Cir. 2009). "The deliberate-indifference standard requires both an objective and subjective analysis." *Barton*, 820 F.3d at 964 (quotation omitted); *accord Vaughn*, 557 F.3d at 908. "The objective component requires a plaintiff to demonstrate an objectively serious medical need. The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Vaughn*, 557 F.3d at 908 (citation omitted).

To meet the objective prong of the deliberate-indifference analysis, Plaintiff's Complaint must plead facts sufficient to demonstrate that he suffered from an objectively serious medical need. *See Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir. 2006). "To be objectively serious, a medical need must have been 'diagnosed by a physician as requiring treatment' or must be 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Jackson*, 756 F.3d at 1065 (quoting *Scott*, 742 F.3d at 340). The subjective prong, however, requires Plaintiff to allege that the Ramsey County Defendants actually knew that Plaintiff needed medical care and disregarded "a known risk to [his] health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) (citation omitted). "This showing requires a mental state 'akin to criminal recklessness.'" *Jackson*, 756 F.3d at 1065 (quoting *Gordon ex rel. Gordon*, 454 F.3d at 862). A complaint must allege facts that demonstrate "more than negligence, more even than gross negligence." *Id.* (quoting *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014)).

Here, construed liberally, Plaintiff's Complaint alleges that he was sexually assaulted on three separate occasions by ADC staff (Compl. ¶¶ A, B, E), and that as a consequence he suffered severe psychological distress for which he repeatedly sought treatment, but that his attempts to secure treatment—including the filing of grievances and appeals thereof—were flatly ignored by the Ramsey County Defendants. (*See, e.g.*, *id.* ¶¶ C-A, C-B, D, H.) This Court finds that these facts, taken as true, are sufficient to state a minimal claim for deliberate indifference to a serious medical need. *See, e.g.*, *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (affirming denial of summary

23

judgment on a deliberate indifference claim where the record showed that there was a dispute of fact over whether defendant healthcare professional delayed plaintiff's treatment and denied plaintiff access to a different mental healthcare professional, where prisoner-plaintiff was seeking treatment for emotional trauma arising out of a rape). Accordingly, this Court recommends that summary judgment be denied as to Plaintiff's deliberate indifference claim.

### F.    Plaintiff's Official-Capacity Claims Against Ramsey County

The Ramsey County Defendants next argue that Plaintiff's official-capacity claims fail as a matter of law because Plaintiff has failed to show that he was deprived of his rights as a result of an unconstitutional policy, practice, or custom. (Mem. in Supp. 14.) Again, to the extent this argument rests on the RFAs, that argument fails. The Ramsey County Defendants also argue, however, that Plaintiff's official-capacity claims fail as a matter of law. This Court agrees.

"A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Where the public employer is a political subdivision like Ramsey County, that subdivision may only "be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional policy or custom of the subdivision." *Id.* Accordingly, for a political subdivision to be held liable under § 1983, there must be a showing that the entity's policies or customs "played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Here, Plaintiff filed suit against the named Ramsey County Defendants in both their individual and official capacities. (*See* Compl. ¶¶ A, B, C-B, E, F, G, I, N.) Plaintiff's official-capacity claims are, in fact, directed at the Ramsey County Defendants' employer, Ramsey County. *See Johnson*, 172 F.3d at 535. Because Ramsey County is a political subdivision of the state of Minnesota, *see* Minn. Stat. § 465.719, Plaintiff must show that a policy or custom of Ramsey County was responsible for the deprivation of his rights. *Graham*, 473 U.S. at 166. But Plaintiff alleges no facts at all in his Complaint suggesting that such is the case, nor has he identified evidence obtained through discovery that would create a material issue of fact regarding this contention. This Court therefore recommends that the Motion for Summary Judgment be granted in part, and Plaintiff's claims against the Ramsey County Defendants' in their official capacity be dismissed.

### G.    Dismissal Under § 1915A(b)

Plaintiff's Complaint identified multiple additional theories of relief under federal law in addition to his Eighth Amendment conditions-of-confinement and deliberate-indifference claims. In Plaintiff's enumerated counts he invokes 42 U.S.C. § 1997(1)(b)(ii)-(iii) (Count 1), 42 U.S.C. § 1981 and retaliation (Count 2), and the Prison Rape Elimination Act (28 C.F.R. § 115) (Count 4). (Doc. No. 4 at 25.) In the written text of his Complaint, Plaintiff additionally mentions claims for retaliation (Count 5) and the Equal Protection Clause (Count 6). This Court finds that these claims are all subject to dismissal pursuant to the Court's inherent authority to dismiss any portion of a

case or claim that is insufficient to state a claim as soon as practicable. 28 U.S.C. § 1915A(a)-(b).

Section 1997 does not independently create a cause of action; it is merely a definition section. Plaintiff does not identify any portion of that statute beyond subparts (b)(ii) and (b)(iii), defining an institution as a jail, prison, correctional facility or pretrial detention facility. 42 U.S.C. § 1997(1)(b)(ii)-(iii). Because these definitions do not state a cause of action, this Court recommends that Plaintiff's "Count 1" be dismissed under § 1915A(b) for failure to state a claim.

Section 1981 has been found to incorporate claims for retaliation, but retaliation claims in this context are concerned with employment discrimination. *See, e.g.*, *Ellis v. Houston*, 742 F.3d 307, 318–19 (8th Cir. 2014) (discussing the history of § 1981 both in relation to the right to make and enforce contracts, and in relation to retaliation claims in the workplace); *see also CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (holding that § 1981 claims encompass retaliation in the workplace). Because the present matter does not concern employment, this Court recommends that Count 2 be dismissed in part under § 1915A(b) for failure to state a claim.

To the extent that Plaintiff intended to bring a retaliation claim under § 1983, a prisoner may state a claim for retaliation in violation of the Eighth Amendment by alleging that he exercised a constitutionally protected right, prison officials disciplined him, and exercising the right was the motivation for the discipline. *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007). Absent these fundamental allegations about retaliation, however, a prisoner has failed to state a claim. Here, Plaintiff does not

plead facts sufficient to maintain an Eighth Amendment retaliation claim, and therefore this Court recommends Count 5 be dismissed under § 1915A(b) for failure to state a claim.

Next, the PREA does not create a private cause of action. *See, e.g.*, *LeMasters v. Fabien*, No. 09-cv-0702-DSD/AJB, 2009 WL 1405176, at *1, *2 (D. Minn. 2009) (dismissing a pro se complaint citing solely to the PREA because "the PREA, does not create a right of action that is privately enforceable by an individual litigant"). Accordingly, this Court recommends Count 4 be dismissed in part pursuant to § 1915A(b) for failure to state a valid claim.

Finally, as to Plaintiff's equal protection claim, Plaintiff does not explain how he was treated differently from others. The Equal Protection Clause prohibits States from denying any person within its jurisdiction equal protection of the laws. U.S. Const. amend. XIV, § 1. Absent an allegation that he was treated differently from similarly situated inmates, Plaintiff cannot maintain an equal protection claim *See, e.g.*, *Klinger v. Dept. of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("[A]bsent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim."). Thus, this Court recommends that Count 6 also be dismissed pursuant to § 1915A(b) for failure to state a claim.

In sum, this Court recommends pursuant to § 1915A, that Plaintiff's Counts 1, 5, and 6 be dismissed in their entirety, Count 2 be dismissed in part as it pertains to retaliation under § 1981, and Count 4 be dismissed in part as it pertains to the PREA.

## H.     State Law Claims

In addition to the unaddressed claims of federal law, the Ramsey County Defendants also do not address Plaintiff's state-law claims. Plaintiff specifically alleged that the Ramsey County Defendants violated Minn. Stat. §§ 363A.12 subd. 1 (discrimination in public services), 15.86 (state agency plans of zero tolerance to violence), 43A.38 (code of ethics for state executive branch employees), 24.01 and 15.43 (acceptance of advantage by state employees), and Policy 103.220 (personal conduct of Minnesota Department of Corrections Employees). These allegations are encompassed in Counts 2-4. While this Court takes no position on the merits of those claims, it is Defendants' responsibility to address them if they seek to have them dismissed on summary judgment. Accordingly, this Court recommends that summary judgment be denied as to Plaintiff's state-law claims.

## RECOMMENDATION

Based on all the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.     The Ramsey County Defendants' Motion for Summary Judgment (Doc. No. 43) be **GRANTED IN PART** and **DENIED IN PART** without prejudice as described above;

2.     The Ramsey County Defendants must advise the Court on their knowledge of the whereabouts of Defendants Hendrikt and Ross. Specifically, they must advise the Court within **14 days** as to whether they have contact information to assist in the service on those Defendants. Once the Ramsey County Defendants' response is received, this

Court will direct appropriate future service efforts utilizing the Marshals Service as needed;

3.      An Amended Pretrial Scheduling Order attached as Exhibit A be issued to reopen and extend fact discovery through **July 1, 2021**, to reset the dispositive motion deadline to **September 1, 2021**, and the trial ready date to **December 1, 2021**;

4.       Pursuant to § 1915A(b), Plaintiff's **Counts 1**, **5** and **6** be **DISMISSED** for failure to state a claim, **Count 2** be **DISMISSED IN PART** as it pertains to retaliation under § 1981, **Count 4** be **DISMISSED IN PART** as it pertains to the PREA;

5.      Plaintiff's official-capacity claims against the named Defendants be **DISMISSED**; and

6.      The remaining claims in this litigation be: **Count 2** (Policy 103.220), **Count 3** (Eighth Amendment conditions-of-confinement and deliberate indifference claims under § 1983; Minn. Stat. § 363A.12, subd. 1), **Count 4** (all other state law claims).

Dated: January 29, 2021                     *s/ Becky R. Thorson*
                                            BECKY R. THORSON
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).