# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Wilbert Glover, | Civ. No. 19-0304 (NEB/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Richard Rodriguez, Alberts Ross, R. Paul #705, Matt Bostrom, Greg Croucher, Joe Paget, Tom Roy, Officer Hendrikt, and the Minnesota Department of Corrections,[1] | |
| Defendants. | |

Wilbert Glover, *pro se* Plaintiff.

Robert B. Roche, Ramsey County Attorney's Office, St. Paul, MN 55101, for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on the Defendants' Second Motion for Summary Judgment. (Doc. No. 65.) Defendants filed their Second Motion for Summary Judgment on August 31, 2021. (*Id.*) Plaintiff filed his opposition to Defendants' Second Motion for Summary Judgment on September 21, 2021. (Doc. No. 74.) For reasons that follow, this

---

[1]     The Court dismissed Defendant Greg Croucher from this case when it granted his Motion to Dismiss (Doc. No. 24) on December 18, 2019. (Doc. No. 38.) The Court also dismissed Defendants Tom Roy and the Minnesota Department of Corrections from this case upon initial review. (Doc. No. 14.)

Court recommends that Defendants' Second Motion for Summary Judgment be granted in part and denied in part.

I.     **ANALYSIS**

    A.     **Mr. Glover's Claims**

As background, on February 22, 2021, District Judge Nancy Brasel adopted this Court's earlier Report & Recommendation granting in part and denying in part the Defendants' original Motion for Summary Judgment. (Doc. No. 57.) As a result of the partial grant and partial denial, Plaintiff's claims were narrowed to "Count 2 (Policy 103.220), Count 3 (Eighth Amendment conditions-of-confinement and deliberate indifference claims under 42 U.S.C. § 1983 and Minn. Stat. § 363A.12, subd. 1), and Count 4 (all other state law claims)" and limited further to personal-capacity claims. (*Id.* at 2.)

The Defendants argue in their memorandum in support of their Second Motion for Summary Judgment that they are entitled to summary judgment on all remaining claims. (Doc. No. 67, Defs.' Mem. in Supp. of Mot. for Summ. Judg. ("Defs.' Mem.") 1–2.) The Defendants contend that claims against Defendants Bostrom, Paget and Rodriguez are defeated by qualified immunity because the three individuals did not personally participate in any of the allegedly harmful conduct. (Defs.' Mem. at 11–21.) Defendants also argue that the claim against Defendant Paul should be dismissed because Plaintiff's evidence is insufficient in opposition to Paul's attested declaration. (*Id.* at 17–18.) They argue that the claim of deliberate indifference to medical needs should be dismissed because it is not associated with the named Defendants, and it is also refuted by the

medical records for Plaintiff's stay at the jail. Defendants further argue that the remaining claims should be dismissed for failure to state a claim. (*Id.* at 18–21.) In addition, the Defendants contend that claims against Defendants Hendrikt and Alberts Ross must be dismissed because Plaintiff failed to file a timely amended complaint and these Defendants still have not been served. (*Id.* at 8–11.)

### B. Summary Judgment

#### 1. Defendants' Factual Allegations

In support of their Second Motion for Summary Judgment, the Defendants submitted multiple exhibits.

First, the Defendants submitted a set of interrogatories and a right to sue letter issued to Plaintiff by the Minnesota Department of Human Rights. (Doc. Nos. 68, 68-1, 68-2.)

Second, the Defendants submitted Plaintiff's medical records from his time at the Ramsey County Adult Detention Center ("ADC") in 2015 and 2016. (Doc. Nos. 70, 70-1.) The records reflect ongoing care for Plaintiff, including notes from psychology/mental health visits. (Doc. No. 70-1.) On March 29, 2016, a provider visited with Plaintiff upon request, and he indicated that he wished to speak to Sergeant Skullart about grievances he had filed and concerns he had about staff experience. (*Id.* at 13–14.) Additionally, on October 24, 2016, the same provider met with Plaintiff for a wellness check at the request of a pod officer. (*Id.* at 9–10.) The meeting notes indicate that on three occasions during the visit Plaintiff reported that he was "doing 'very well' with no mental health concerns." (*Id.* at 9.) The records also show that Plaintiff received screening and

assessment for possible tuberculosis and on multiple occasions he was treated for injuries from self-harm or altercations. For example, Plaintiff was treated for an injured hand in March 2016. (*Id.* at 21–22, 27–28.)

Third, Defendant Paul provided a declaration about his interactions with Plaintiff. (Doc. No. 69.) In it, Paul averred that "Plaintiff's allegations against me are entirely false. I have never touched Plaintiff's genitals or otherwise touched him inappropriately." (*Id.*)

## 2.   Standard of Review

Summary judgment is appropriate if, "after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) (quotation omitted). In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). A disputed fact is material when its resolution "might affect the outcome of the suit under the governing law," and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc*., 643 F.3d 1081, 1085 (8th Cir. 2001) (quotations omitted). If it does so,

the non-moving party may not rest on mere allegations or denials, but must point to evidence of "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see also* Fed. R. Civ. P. 56(c)(1). Conclusory assertions, standing alone, are not enough to create a genuine issue of material fact. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 820 (8th Cir. 2011). Where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

When deciding a summary judgment motion, courts liberally construe pro se pleadings and hold them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a pro se plaintiff's claims cannot survive a summary judgment motion unless he has set forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). In the specific context of prisoner litigation, the Eighth Circuit stated in *Watson v. Jones*, 980 F.2d 1165, 1166 (8th Cir. 1992), that "[p]laintiffs' verified complaint is the equivalent of an affidavit for the purpose of summary judgment." The *Watson* Court found that a verified complaint by two inmates that detailed specific instances of sexual assault by a female guard was sufficient to create a material dispute of fact in opposition to that guard's own sworn affidavit submitted in favor of summary judgment because the verified complaint was the inmates' own equivalent of a sworn affidavit. *Id.*

### 3.    Discussion

### a.  Claims Against Defendants Rodriguez, Paget and Bostrom

The Defendants contend that the claims against Defendants Rodriguez, Paget, and Bostrom should not proceed because these individuals enjoy qualified immunity and there are no allegations that they personally participated in the alleged constitutional wrongdoing. (Defs.' Mem. at 11–17.) Plaintiff counters that qualified immunity fails because the Defendants rely wholly on their requests for admission ("RFA"), and the Court already rejected their RFAs as a basis for summary judgment. (Doc. 74-3, Pl.'s Mem. in Opposition ("Pl's Mem.") 51–52.) He also argues that the three defendants had personal involvement in the alleged wrongdoing because they did not respond to his kites or grievances. (*Id.* at 12–26.) In reply, the Defendants argue that they do not rely upon RFAs, and that Plaintiff has not set forth sufficient evidence to demonstrate that the three defendants personally participated in constitutional wrongdoing. (Doc. No. 80, Defs.' Reply at 6–9 & n.1.)

Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established if its "contours were sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that [he or she] was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *City & Cnty. of S.F., Cal. v. Sheehan*, 575 U.S. 600, 611 (2015) (quotations,

citations, and alterations omitted). The dispositive question is "whether it would have been clear to a reasonable officer in the [defendant's] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 572 U.S. 744, 745 (2014*)* (quotation and brackets omitted). In other words, "[t]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotations and alterations omitted). This exacting standard "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted).

Here, Plaintiff's remaining claims against Defendants Rodriguez, Paget and Bostrom are Eighth Amendment deliberate indifference and conditions of confinement claims related to his allegations that he was sexually harassed or assaulted by guards at the Ramsey County ADC on four occasions.[2] To state a valid claim under § 1983, a plaintiff must describe in detail the personal actions taken by a government actor that caused him harm. *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) ("To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement

---

[2]     Plaintiff alleges that on December 30, 2015, he was assaulted by Defendant Paul (Doc. Nos. 4 at 7–8, 4-1 at 1), on January 19, 2016, he was assaulted by Defendant Hendrikt (Doc. Nos. 4 at 9, 4-1 at 2), and on May 22, 2016, he was assaulted by Defendant Ross and another officer (Doc. No. 4-1 at 12). Plaintiff also alleges that on December 7, 2016, he was assaulted by an unnamed officer referred to as "officer sheriff" which Plaintiff does not clearly associate with any named Defendant. (Doc. No. 4-1 at 31.)

in the alleged violation.") Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Speed v. Ramsey Cnty.*, 954 F.Supp. 1392, 1397 (D. Minn. 1997) (same). In other words, civil rights claimants must plead sufficient facts showing each named defendant's personal involvement in alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (emphasis added); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim.").

Section 1983 actions against an individual cannot be premised on *respondeat superior* liability; a defendant can only be liable for his or her personal acts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) ("To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights.") (citation omitted); *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994) ("A supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity.") (quoting *Bolin v. Black*, 875 F.2d 1343, 1347 (8th Cir. 1989)).

General responsibility for supervising a facility is not sufficient to establish personal liability. *See Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th

8

Cir. 1995) (citing *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987)). Additionally, a supervisor is not liable for failing to respond to grievances. *See*, *e.g.*, *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)). There is no substantive right to any particular action or response to a grievance. *Buckley*, 997 F.2d at 495.

Plaintiff's allegations against Defendants Rodriguez, Paget, and Bostrom center on their alleged lack of responsiveness to his grievances. Plaintiff makes no allegations that suggest any of these three defendants personally harmed him or were even present during the alleged sexual assault or harassment incidents. Although Plaintiff submitted significant evidence that he attempted to tender kites or grievances about the alleged assaults that mention these defendants, there is no constitutional right to any given response to a grievance, so he has not established their liability via ignorance or indifference to the concerns he raised. *See Lomholt*, 287 F.3d at 684.

Perhaps Plaintiff's allegations are best interpreted as claims that Defendants Rodriguez, Paget, and Bostrom failed to properly supervise or train the offending employees. "A supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). The plaintiff must show that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. *Tilson v. Forest City Police Dep't*, 28 F.3d 802, 807 (8th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995). To show individual liability of a supervisor, a plaintiff must establish that the supervisor did

the following: (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused the injury. *Andrews*, 98 F.3d at 1078. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. *Id.* (citation omitted).

In *Parrish v. Ball*, the Eighth Circuit found that a sheriff was entitled to qualified immunity against claims that one of his officers sexually assaulted an arrestee. 594 F.3d 993, 1001–03 (8th Cir. 2010). The Eighth Circuit noted that the summary judgment record did not support a finding that the sheriff had notice of a pattern of unconstitutional acts by subordinates, nor did he have reason to expect that the officer was about to engage in sexual assault, thus he had no reason to believe closer supervision of the officer was necessary. *Parrish*, 594 F.3d at 1002–03.

To establish notice of a pattern of unconstitutional conduct, evidence must show that a supervisor was aware of a pattern of misconduct that was very similar to the misconduct at issue. *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012). If there is no showing that a supervisor received previous notice of sexually improper behavior by a subordinate, he cannot be said to be on notice of a pattern. *S.M. v. Krigbaum*, 808 F.3d 335, 342–43 (8th Cir. 2015). Notice of a single incident, or series of isolated incidents, is also not enough to establish notice of a pattern. *See*, *e.g.*, *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018); *see also Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (a single fight where guards failed to intervene was not enough to show that supervisors

10

of the facility were liable for failed supervision). Even notice of multiple past incidents of sexually suggestive behavior towards adults was found not to be notice of a pattern of improper conduct in relation to allegations that a school employee sexually assaulted minors. *Jane A. v. Special School Dist. of St. Louis County*, 901 F.2d 642, 646 n.4 (8th Cir. 1990). However, numerous complaints of a continuing course of conduct over a two-year period, combined with a verbal discussion of the issues with a supervisor was found to be enough to constitute notice of a pattern of unconstitutional conduct. *See Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989) (finding that although a single incident or series of isolated incidents is usually insufficient to establish notice of a pattern, as the number of incidents grow a finding of tacit authorization is more plausible).

On the record, Plaintiff has not established that Defendants Rodriguez, Paget, and Bostrom had notice of a pattern of misconduct, or that they reasonably should have foreseen the four alleged assaults that occurred. This Court thoroughly reviewed each written brief and batch of exhibits that Plaintiff has submitted throughout the course of the litigation, including, but not limited to, docket numbers 4, 4-1, 30, 32, 34–35, 39–41, 49–50, 53, 53-1, 74, 75, 77–79. A discussion as to each defendant follows.

Specifically, as to Defendant Rodriguez, the entire record contains one inmate request form that was explicitly directed to Rodriguez's attention. On May 4, 2016, Plaintiff wrote, "Sergeant Rodriguez may I please see you soon as possible about this tall officer keep using Wilbert nigger here in segregation I also wrote to you about him sexual harass me." (Doc. No. 4-1 at 8.) The inmate request form was left blank as to the date and time it was received, or the officer who received it. The officer's response

11

section says, "[a]bout?" This single document does not establish that Rodriguez was on notice of a pattern of unconstitutional activity, or that he failed to act. Although the record contains many inmate grievance forms that mention Rodriguez by name, this May 4, 2016, inmate request form is the only one that shows an attempt to directly communicate with Rodriguez. Plaintiff's evidence and allegations concerning Rodriguez are insufficient to show that he knew of a pattern of unconstitutional activity because of a single piece of correspondence or even an isolated series does not establish a pattern. Additionally, Plaintiff does not seem to allege in this particular piece of correspondence that he had been assaulted on multiple occasions. This sole inmate request form is insufficient evidence to show that Rodriguez knew of a pattern of wrongful conduct. Supervisors are not expected to anticipate a need to train or supervise concerning conduct so improper that its unconstitutionality is patently obvious. *See Parrish*, 594 F.3d at 1003; *Livers*, 700 F.3d at 356. There are also no factual allegations showing that Rodriguez actively ignored the problem or refused to render aid, and thus caused this harm or future harm. Absent a showing that Rodriguez violated a clearly established constitutional right, he is entitled to qualified immunity. Accordingly, this Court recommends that summary judgment be granted in favor of Defendant Rodriguez.

The same is true for Defendant Bostrom. The record contains two inmate request forms directed to Bostrom personally. First, on July 25, 2016, Plaintiff wrote, "May I please see you about some of these racial profile officers us[ing] nigger and sexual harassment abuse sent you emergency appeal thank you." (Doc. No. 4-1 at 17.) Second, on September 4, 2016, Plaintiff wrote, "my grievances is not being answer I send you

12

emergency grievance on 7/4/2016 on 7-25-2016 kite about sexual harassment abuse voyeurism comments by these officers." (Doc. No. 4-1 at 18.) Neither of the two pieces of correspondence addressed to Defendant Bostrom provide any detail about the four incidents of sexual assault that Plaintiff alleges occurred, nor do they suggest to Defendant Bostrom that there was a pattern of unconstitutional acts. Again, although many grievances mentioned Defendant Bostrom by name, those grievances do not support a claim against Bostrom because they were not directed to him personally and thus did not put him on notice of a pattern. Bostrom is not assumed to know about a pattern of wrongful conduct simply because he is a supervisor, or because subordinates may be aware of the issues. *See*, *e.g.*, *Estate of Rosenberg by Rosenberg*, 56 F.3d at 37; *Parrish*, 594 F.3d at 1001-03. Absent a showing that Bostrom personally violated a constitutional right, he is entitled to qualified immunity. Accordingly, this Court recommends that summary judgment also be granted in favor of Defendant Bostrom.

As for Defendant Paget, the original exhibits to the complaint contained one inmate request form directed to Paget. On September 4, 2016, Plaintiff wrote, "First 793 lied saying this officer 718 didn't say these racial slurs I have evidence other inmates have been sexual abuse [] provided nothing is being done." (Doc. No. 4-1 at 21.) This document alone certainly is not enough to establish a pattern of wrongful conduct towards Plaintiff because it does not contain any details about an assault towards him. However, construing the record broadly in favor of Plaintiff, there is a second inmate

request form directed to Paget that appears relevant.[3] On April 14, 2016, Plaintiff wrote,

"I have send you a number of kites, grievances and grievance appeal signed by officers

you know about the sexual abuse by Paul 704 and officer Hendrikt other inmates have

send you kites grievances and letters why you want talk to us and our complaint." (Pl.'s

Mem. 29.) This is the most detailed correspondence to Rodriguez, Bostrom, or Paget.

However, a stand-alone document is not enough to establish notice of a pattern because

there cannot be a pattern of one. *See, e.g., Brewington*, 902 F.3d at 803. Even if the

contents of this document allegedly transmitted to Paget were considered indicative of a

pattern of wrongful conduct, there is no evidence showing that Paget was deliberately

indifferent to the contents of the document, that he failed to take remedial action, or that

his failure was the proximate cause of an injury.[4] Plaintiff's evidence and allegations are

simply insufficient to substantiate a claim against a supervisor for personal actions or a

failure to train or supervise subordinates concerning sexual misconduct.

In sum, this Court finds that Plaintiff's claims pertaining to Defendants Rodriguez,

Bostrom, and Paget are not supported by sufficient allegations to create a genuine dispute

---

[3]     There is also a third inmate request form directed to Paget complaining of sexual abuse, but it is dated December 18, 2015, so it predates any of the four alleged sexual assaults presented by Plaintiff in his complaint. (Doc. No. 74-3 at 30.) Plaintiff does not contend to this Court that he suffered earlier instances of abuse, so any allegation to Paget that earlier instances occurred is not relevant to a pattern surrounding the incidents complained of in this case.

[4]     If anything, the record suggests that Paget may have responded by scheduling a mental health visit for Plaintiff. On May 10, 2016, Plaintiff was seen by a clinician at Paget's request because Plaintiff was apparently filing a large volume of grievances. (Doc. No. 70-1 at 11-12.) This fact tends to suggest Paget was responsive to the correspondence directed specifically to him.

of material fact at the summary judgment phase. In essence, each defendant received one

or two pieces of correspondence from Plaintiff concerning sweeping allegations of racial

or sexual harassment. There are no allegations supported by facts that show any of the

three defendants were deliberately indifferent to any alleged pattern of sexual misconduct

or that their failure to take remedial action caused the harm alleged. Based on the lack of

factual allegations to substantiate claims against these three supervisors, Plaintiff has

failed to demonstrate that they have violated a clearly established right. Thus, all three are

entitled to qualified immunity. Therefore, this Court recommends that summary judgment

be granted in favor of Defendants Rodriguez, Bostrom, and Paget.

### b. Claims Against Defendant Paul

The Defendants argue that summary judgment should be granted in Defendant

Paul's favor because Paul's undisputed declaration states that he did not improperly touch

Plaintiff's genitals. (Defs.' Mem. at 17–18.) Defendants argue that the only evidence

Plaintiff produced regarding Paul is a grievance that is inadmissible hearsay. But the

Defendants' argument is inaccurate. On page seven of his sworn original complaint,

Plaintiff wrote, "date 12/30/2015 time about 10:00AM cell 519D Sheriff Officer Badge

#705 Paul, R he made me take off my jumpsuit strip search me took his hand and grasp

my penis squeeze it hard and gestures." (Doc. No. 4 at 7.) A prisoner's statement in a

sworn complaint is sufficient to refute a defendant's affidavit on summary judgment.

*Ward v. Moore*, 414 F.3d 968, 970–71 (8th Cir. 2005); *Watson*, 980 F.2d at 1166. Thus,

the record contains a genuine dispute of material fact as to the propriety of Defendant

Paul's alleged actions. Thus, this Court must recommend denying summary judgment as to Defendant Paul.

### c.   Claims of Deliberate Indifference to a Serious Medical Condition

In his complaint, Plaintiff argued that Defendants were deliberately indifferent to his medical needs because he sent health care requests asking to see a doctor or psychiatrist about his sexual abuse incidents and he never received an answer. (Doc. No. 4 at 12.) Defendants argue that summary judgment should be granted in their favor on Plaintiff's claims related to deliberate indifference to a serious medical need because Plaintiff has not associated these claims with any individually named defendants, and the medical records show that he received adequate care. (Defs.' Mem. at 18–21.) In support of their contention, Defendants submitted Plaintiff's medical file. (Doc. No. 70.) Plaintiff argues in response that summary judgment cannot be granted concerning the claim for mental health care because the record contains many requests in grievances and on health care request forms that show he attempted to get care but did not receive the care he needed. (Pl.'s Mem. at 33–38.)

Although this Court previously recommended that summary judgment be denied because the complaint and accompanying documents contained sufficient allegations to make out a minimal claim for deliberate indifference to his mental health needs, this Court now finds that the record that has since developed supports a recommendation in favor of granting summary judgment. In support of summary judgment, the Defendants submitted Plaintiff's medical record from his time at the Ramsey County ADC. (Doc. No. 70-1.) The medical records include notes from a psychology/mental health check that

16

occurred on October 24, 2016. (Doc. No. 70-1 at 9.) In the notes Plaintiff was reported to be in a "good mood" for many weeks, and he stated "on three occasions he is doing 'very well' with no mental health concerns." (*Id.*) This encounter flatly discredits Plaintiff's arguments that he could not manage to secure a visit for his mental health, or that he was in acute mental distress and was always ignored. The notes from the visit also indicate that Plaintiff was instructed about how to contact the clinician for further mental health services, to which he responded he did not think he would need it, but he was appreciative for the information. (*Id.* at 10.)

The medical records also contain mental health notes from March 29, 2016, and May 10, 2016. (*Id.* at 11–14.) The March notes indicate that Plaintiff was seen upon his own request and that he experienced frustrations about wanting to speak to Sergeant Skullart about grievances and concerns about a staff experience. (*Id.* at 13–14.) The provider validated Plaintiff's concerns and instructed him on how to use self-care to manage frustration. (*Id.*) On May 10, 2016, Plaintiff was apparently seen upon request of undersheriff Paget about his filing of many grievances. (*Id.* at 11–12.) The notes suggest that Plaintiff had some trouble communicating during the visit, but that he agreed he would attempt to reduce the quantity of grievances he filed. (*Id.*) The notes from these mental health encounters contradict Plaintiff's own claims that he was unable to request mental health care visits, or that mental health care completely ignored him. In light of the credible evidence that Plaintiff was provided with mental health care services, and with the lack of any evidence further supporting his allegations that he never received

17

care or was ignored, this Court finds that summary judgment is proper in the Defendants'
favor concerning the deliberate indifference claim.

This Court notes that the Defendants are also correct to point out that the
deliberate indifference to medical care claim is not associated with any named
defendants. To state a deliberate indifference claim for medical needs, a plaintiff must
establish that he had a serious medical need and that a defendant was deliberately
indifferent to that need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Supervisors can
only be held liable for an Eighth Amendment violation, such as deliberate indifference to
a medical need, if he or she is either aware of the violative conduct or is personally
involved. *Smith v. Clarke*, 458 F.3d 720, 723 (8th Cir. 2006). Numerous grievances to
prison staff, even if signed by a supervisor's subordinates, are not enough to show that a
supervisor was aware of or personally participated in deliberate indifference to a medical
need. *Id.*

Here, Plaintiff's only evidence in the record concerning medical needs is in the
form of numerous grievances and request forms. The requests submitted to supervisors
Rodriguez, Paget, and Bostrom do not mention mental health needs. Although grievances
in the record mentioned health needs, the very existence of the grievances without more
are not enough to establish that the supervisors were liable for any alleged deliberate
indifference to Plaintiff's mental health needs. Furthermore, the medical record contains
a mental health evaluation form that states the mental health visit occurred because
supervisor Paget requested it. In light of this medical record, and the lack of other

specific evidence, the record supports a recommendation that summary judgment be granted in Defendants' favor.

### d. State Law Claims

The Defendants argue that all of Plaintiff's remaining state law claims must fail either for failure to state a claim or for untimeliness. (Defs.' Mem. at 21–24.) The Court previously denied summary judgment on these claims because the Defendants simply omitted any arguments pertaining to these claims in their First Motion for Summary Judgment. Now having the benefit of their arguments, this Court agrees that it is appropriate to grant summary judgment with regards to the state law claims.

### i.       Plaintiff's Reference to Policy 103.220

The Defendants argue that Policy 103.220 is a reference to an internal corrections policy document that Plaintiff appended to his complaint (Doc. No. 4-1 at 28), and that the policy is not a valid basis for a claim under § 1983. (Defs.' Mem. at 21.) Plaintiff counters that Policy 103.220 is a reference to "personal code of conduct employees as defined in 42 U.S.C. 1997 prison, jail and other facility defendants." (Pl.'s Mem. at 16.) Section 1997 is a definitions section that does not bestow any rights. 42 U.S.C. § 1997. Additionally, the Defendants are correct that to the extent Policy 103.220 refers to an internal policy guide for the Ramsey County ADC, nothing in such a guide creates a cause of action for a § 1983 lawsuit. *See*, *e.g.*, *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1992) (a violation of a prison policy is not actionable in a § 1983 lawsuit). To the extent Plaintiff wishes to bring a lawsuit based on a jail policy, his claim must fail because he cannot do so under § 1983. By contrast, to the extent he refers to some other provision of

19

law, it is not clear what his claim is, and thus he has failed to state a claim. Accordingly, this Court recommends granting summary judgment on this claim because Plaintiff cannot maintain a § 1983 claim that relies on local jail policy.

### ii.       Minnesota Human Rights Act Claims

The Defendants argue that Plaintiff cannot maintain a claim under the Minnesota Human Rights Act ("MHRA") because such an action must be commenced within 45 days of the right to sue letter, and Plaintiff did not commence this case until nearly an entire year after the right to sue letter issued. (Defs.' Mem. at 22.) Both Defendants and Plaintiff submitted the right to sue letter. Under Minnesota law, Minn. Stat. § 363A.33, subd. 1(1), a civil action may be commenced within 45 days of receipt of the right to sue notification, which is presumed to be received five days after service by mail of said notification. Plaintiff's notification was issued on March 23, 2018; thus, per Minnesota statute, it was presumed received on March 28, 2018. (Pl.'s Mem. at 57.) Plaintiff did not initiate this litigation until February of 2019, so it is far beyond the 45 days provided by Minnesota law. Accordingly, this Court recommends that summary judgment be granted in Defendants' favor on this claim because it is untimely under Minnesota law.

### iii.      Various Minnesota Statutory Claims

The Defendants argue that Plaintiff's claims in reliance on Minn. Stat. §§ 24.01, 15.43, 15.86, and 43A.38 must fail because the statutes do not create private causes of action, and the statutes concern the conduct of state actors, not county employees. (Defs.' Mem. at 22–24.) Plaintiff did not directly respond to these arguments for summary judgment. Defendants correctly argue that a federal court will not read a private cause of

action into a statute where one does not exist. *See*, *e.g.*, *Hara v. USAA*, 820 F.Supp.2d 1004, 1007 (D. Minn. 2011) (declining to read a private cause of action into a state insurance statute that did not include one).

Minn. Stat. § 24.01 was repealed in 1961, so Plaintiff cannot maintain a claim premised on this statute.

Minn. Stat. § 15.43 makes it a misdemeanor for state employees to accept benefits in relation to goods or services for higher education. Minn. Stat. § 15.86 requires state entities to create policies for zero tolerance to workplace violence, but it explicitly states that it does not create any civil liability. Minn. Stat. § 43A.38 creates a "code of ethics for employees in the executive branch," and it discusses, among other things, acceptance of gifts by state employees, use of state information or property, and conflicts of interest. There is no mention of a private cause of action. A review of all three statutory provisions reveals no private cause of action for Plaintiff to bring his claims. Additionally, the record does not contain any factual allegations made by Plaintiff indicating conduct that is even relevant to these statutes. Accordingly, this Court recommends that summary judgment be granted in Defendants' favor because Plaintiff has failed to state a cause of action in reliance upon any of these statutory provisions.

### C.   Lack of Service on Defendants Named "Officer Hendrikt" and "Alberts Ross"

#### 1.   Background and Procedural History

Service of process on defendants "Officer Hendrikt" and "Alberts Ross" has been a contested issue for the entirety of this litigation. On January 9, 2021, the undersigned

issued a Report and Recommendation on Defendants' original Motion for Summary Judgment, recommending that the motion be granted in part and denied in part. (Doc. No. 55.) The Report and Recommendation addressed the problem regarding the lack of service on defendants that Plaintiff named as "Alberts Ross" and "Officer Hendrikt." (*Id.* at 19–21.) At the time of Defendants' first motion, Plaintiff had completed Marshal Service forms for each defendant and the Court transmitted waiver of service forms to Ramsey County on behalf of Defendants Bostrom, "Hendrikt," Paget, Paul, Rodriguez, and "Ross." (Doc. No. 15.) On July 5, 2019, counsel for Ramsey County returned the waivers executed and entered an appearance on behalf of Defendants Paget, Rodriguez, Paul, and Bostrom. (Doc. No. 19.) In the answer to Plaintiff's original complaint, Defendants stated that they did not employ an "Officer Hendrikt" and that "Albert Ross" was no longer a county employee. (Doc. No. 22 at ¶ 5.) Plaintiff rebutted the answer with documents that showed someone by the name of "Hendrikt" and "Ross." (Doc. No. 30.)

Subsequently, on May 8, 2020, counsel for Ramsey County entered an appearance on behalf of "Hendrikt" and "Ross" but reserved the right to contest personal jurisdiction over the individuals because they had not yet been served, and the county maintained it did not employ individuals by those names. (Doc. No. 42.) The Defendants sought summary judgment on the premise that "Hendrikt" and "Ross" had not been served. This Court declined to dismiss Hendrikt or Ross on the basis of no service, and counsel for the Defendants was directed to help identify the unserved parties. (Doc. No. 55.) Specifically, the Court ordered that:

> The Ramsey County Defendants must advise the Court on their knowledge of the whereabouts of Defendants Hendrikt and Ross. Specifically, they must advise the Court within 14 days as to whether they have contact information to assist in the service on those Defendants. Once the Ramsey County Defendants' response is received, this Court will direct appropriate future service efforts utilizing the Marshals Service as needed.

(*Id.* at 28–29.)

On February 12, 2021, the Defendants sent the Court a letter wherein they plainly stated that Defendant "Hendrikt" may be a reference to Tanner Hendrikson[5], a correctional officer for Ramsey County. (Doc. No. 56.) Defendants declined to provide contact information for Hendrikson because the county, "does not typically provide contact information for correctional officers to convicted criminals for safety reasons." (*Id.*). As for Defendant "Alberts Ross," they indicated that it may be a reference to a former correctional officer, Ross Alberts, who now resides out of state. The county indicated it had a phone number and email address for Mr. Alberts but did not tender the contact information in their February 12, 2021 letter.

On February 22, 2021, District Judge Nancy Brasel adopted this Court's earlier Report and Recommendation granting in part and denying in part the original Motion for Summary Judgment. (Doc. No. 57.) In its Order, the Court additionally acknowledged the letter concerning "Hendrikt" and "Ross" and directed the undersigned to "direct the parties regarding the possible amendment of the complaint and appropriate future service efforts utilizing the Marshals Service, as needed." (Doc. No. 57 at 1–3.) On the same day,

---

[5]      In the letter Hendrikson is spelled two ways: Hendrikson and Hendrickson. For ease of reference, this Court will use Hendrikson here.

23

the Court set a discovery and briefing schedule. (Doc. No. 59.) The deadline for an amended complaint was March 19, 2021. (*Id.*)

The March 19, 2021 deadline passed without any communication from Plaintiff. Then, on May 5, 2021, the Court received a five-page Amended Complaint and exhibits.[6] (Doc. No. 60.) The Amended Complaint discussed only the allegations against the defendants Plaintiff originally named as "Officer Hendrikt" and "Alberts Ross," but did not clarify their identities by naming Tanner Hendrikson or Ross Albert consistent with the individuals disclosed by Ramsey County in their February 2021 letter to the Court. The Amended Complaint was not signed under the penalty of perjury, as was the original complaint. Significantly, the day after filing his Amended Complaint, Plaintiff filed a letter and attachment. (Doc. No. 61.) In this letter, Plaintiff again stated that Ramsey County's documents supported his position that he had correctly named an "Officer Hendrikt" and "Albert Ross" as defendants. (*Id.* at 61, 61-1.) In other words, as of May 6,

---

[6]     The Amended Complaint was due by March 19, 2021, but it was not received until May 5, 2021. This Court notes that Plaintiff's signature block reflects a March 19, 2021 handwritten date. The envelope, however, is postmarked May 4, 2021. (Doc. Nos. 60-2 and 60-3.) This Court will treat the postmark as the date of transmission. *See*, *e.g.*, *Kalamas v. Consumer Sols. REO, LLC,* 2011 WL 6026303, *1, *2 (E.D. N.Y. 2011) (motion for reconsideration denied because postmark was after the 14-day period for reconsideration even though the certificate for the motion indicated it was prepared earlier).

        Although this Court could refuse to consider the Amended Complaint because it was untimely, out of an abundance of caution this Court reviewed the Amended Complaint alongside the original complaint to assure a thorough consideration of Plaintiff's claims.

2021, Plaintiff did not acknowledge in any form that Tanner Hendrikson or Ross Albert were the correct identities of the defendants he intended to sue.

### 2.    Standard of Review

Litigants who are granted permission to proceed *in forma pauperis* ("IFP") receive assistance with service of process by the terms of 28 U.S.C. § 1915(d) ("officers of the court shall issue and serve all process in IFP proceedings); Fed. R. Civ. P. 4(c)(3) (litigants authorized to proceed *in forma pauperis* are entitled to service made by the court or a United States Marshal). Under relevant caselaw, a pro se plaintiff is required to provide the court with sufficient information to identify and locate a defendant so that the court is able to effectuate service. *See*, *e.g.*, *Mack v. Dillon*, 594 F.3d 620, 622 (8th Cir. 2010) (citing *Rance v. Rocksolid Granite USA. Inc.*, 583 F.3d 1284, 1286–88 & n.3 (11th Cir. 2009) for proposition that litigants proceeding IFP may rely on Marshals if failure of service is through no fault of litigant, but plaintiff may not remain silent and do nothing once he receives notice of a failure to effectuate service); *Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993) ("While in forma pauperis plaintiffs should not be penalized for a marshal's failure to obtain proper service, it was [plaintiff's] responsibility to provide proper addresses for service on [defendants] Sneed and Webb.").

Rule 4(m) of the Federal Rules of Civil Procedure provides that a court must dismiss an action without prejudice if a defendant is not served within 90 days after a complaint is filed. The timeframe must be extended if good cause is established, and it may be extended if good cause is not shown. *Id.*; *see also Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996). "A showing of good cause requires

25

at least 'excusable neglect'—good faith and some reasonable basis for noncompliance with the rules." *Adams*, 74 F.3d at 887 (internal citations omitted).

Courts have held that "[w]hen a plaintiff has ample notice of a defect in service and does not attempt an obvious correction, however, there is no good cause for the resulting delay if the chosen method of services fails." *Haggins v. Ramsey County*, 2014 WL 772600 *1, *9 (D. Minn. 2014) (citation omitted); *see also Denham v. Aranda*, No. 09-cv-1505 (JLS/WVG), 2011 WL 2313605, at *2 (S.D. Cal. June 9, 2011) ("[A] pro se Plaintiff proceeding in forma pauperis . . . at a minimum should . . . attempt to remedy any apparent defects of which he has knowledge.") (internal edits, quotations, and citations omitted)). Recently, a court in this District dismissed pro se claims against unserved defendants because a plaintiff had been given multiple opportunities to remedy service issues and instructions on how to do so and yet he insisted that the original defective service information was accurate. *Mendez v. Bocanegra*, No. 20-CV-1438 (JRT/DTS) 2021 WL 6112398 *1, *3 (D. Minn. Dec. 27, 2021).[7]

---

[7]       *See also Haggins*, 2014 WL 772600, at *8 (citing *Puett v. Blandford,* 912 F.2d 270, 274–75 (9th Cir. 1989) ("[A]n incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on the U.S. Marshals for service of the summons and complaint, and, *having provided the necessary information to help effectuate service,* plaintiff should not be penalized by having his or her action dismissed for failure to effect service where the U.S. Marshals or the court clerk has failed to perform the duties required of each of them.") (emphasis added)); *Sellers v. United States,* 902 F.2d 598, 602 (7th Cir. 1990) ("[W]hen the district court instructs the Marshal to serve papers on behalf of a prisoner, the *prisoner need furnish* no more than *the information necessary* to identify the defendant.") (emphasis added)); *Rochon v. Dawson,* 828 F.2d 1107, 1110 (5th Cir. 1987) ("[A] plaintiff proceeding in forma pauperis is entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the Marshal's Service to properly effect service of process, *where such failure is through no fault of the litigant*.") (emphasis added).

"If a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). Although Defendants include their request to dismiss Defendants Hendrikt and Ross within their Second Motion for Summary Judgment, in substance they request that the claims against the defendants be dismissed without prejudice for lack of service, per Rule 4(m) of the Rules of Civil Procedure. As such, this Court will treat the disposition of claims against Hendrikt and Ross as a motion to dismiss claims against those two parties, rather than as a motion for summary judgment. This treatment is consistent with the approach taken by the *Haggins* Court, and with Rule 4(m). *See Haggins,* 2014 WL 772660 at *6.[8]

### 3.    Discussion

On May 17, 2019, this Court granted Plaintiff IFP status, which entitled him to assistance with service of process efforts per 28 U.S.C. §1915(d) and Rule 4(c)(3). (Doc. No. 9.) The initial effort to seek a waiver of service from Defendants Hendrikt and Ross failed because defense counsel alleged that Ramsey County did not employee individuals by either name. During the first round of summary judgment, this Court acknowledged

---

[8]     The mere fact that a defendant has received actual notice of a pending action is not sufficient if there has not been compliance with the requirements of Rule 4. *Adams*, 74 F.3d at 885. Under Rule 4(m), the court—on a motion or on its own after notice to the plaintiff—must dismiss an action against a defendant who has not been served. Additionally, under Rule 12(b)(5) of the Federal Rules of Civil Procedure a party may move for dismissal of a claim for insufficient service of process. *See Haggins,* 2014 WL 772600 at *6 (construing a motion for summary judgment on lack of service as a motion to dismiss under Rule 12(b)(5)).

that pro se litigants are entitled to assistance with service of process, and that generally, a pro se litigant's claim should not be dismissed for lack of service of process if he supplies the court with the necessary information to effectuate service. (Doc. No. 55 at 19–20.) This Court acknowledged that Plaintiff had submitted the appropriate Marshals Service Forms (USM-285) for Defendants Hendrikt and Ross, and that when the forms were not returned, he attempted to further provide identifying information by tendering exhibits that bore the identifiers "Hendrikt" and "Ross." (Doc. No. 55 at 20.) Given Plaintiff's efforts early in the litigation, this Court opined that more needed to be done to discern the identity of Hendrikt and Ross so that the Court would be able to effectuate service, including by use of the Marshals Service as needed. (*Id.*) In furtherance of this finding, both the undersigned and District Judge Nancy Brasel directed the parties to cooperate to properly identify and serve "Hendrikt" and "Ross." (Doc. Nos. 55, 57, 59.)

On February 12, 2021, the Defendants complied by tendering a letter wherein they stated that they believed Plaintiff may be referring to individuals named Tanner Hendrikson and Ross Alberts. (Doc. No. 56.) In receipt of this information, and at District Judge Brasel's direction, this Court permitted Plaintiff to amend his complaint to clarify the identity of Defendants "Officer Hendrikt" and "Alberts Ross" so that service could be completed. (Doc. No. 59); *see*, *e.g.*, *Estate of Rosenberg by Rosenberg*, 56 F.3d at 37 ("If discovery identifies other persons who should be named as defendants, it will be simple enough for plaintiff to add them by amendment, after properly securing leave of court."). Plaintiff did not take the opportunity to amend his complaint in a timely fashion by March 19, 2021. Instead, Plaintiff waited nearly two months beyond the

28

deadline until May 5, 2021, to submit an Amended Complaint. (Doc. No. 60.) The

following day he also submitted a letter concerning the identity of the two unserved

parties. (Doc. No. 61.) In the Amended Complaint and accompanying correspondence,

Plaintiff insisted that the names in his complaint—"Officer Hendrikt" and "Alberts

Ross"—were accurate because exhibits he had tendered bore those names.[9]

Plaintiff's insistence that his original complaint was correct prevented this Court

from being able to provide service by seeking a waiver or deploying the Marshals

Service. This Court continues to recognize its obligation to provide service of process

under Rule 4(c)(3) and § 1915(d). But this duty does not extend to parties that are not

properly identified because it is impossible for this Court to effectuate service on

someone it cannot accurately identify. *See*, *e.g., Mack*, 594 F.3d at 622 (reasoning that a

plaintiff must give sufficient information for service); *Lee*, 991 F.2d at 489 (concluding

that it is plaintiff's obligation to provide sufficient information for service). Plaintiff's

non-compliant Amended Complaint filed on May 5, 2021 and Letter filed the next day, in

---

[9]     This Court did not have the benefit of Defendants' disclosure of Tanner Hendrikson or Ross Albert when it issued its January 29, 2021 Report and Recommendation. Since that time, the Court has reviewed the exhibits that Plaintiff submitted in support of his assertion that Hendrikt and Ross were properly named. The Court notes that these documents appear consistent with Ramsey County's later identifications of Tanner Hendrikson and Ross Albert. One of the documents Plaintiff submitted is a chart in which officers are listed in a column with limited spacing. Based on the format of this chart, "HENDRIKT" appears listed in abbreviated form. Other names in the chart also appear abbreviated. (Doc. No. 61-2 at 2.) Further, an incident report lists the Reporting Officer as "Alberts, Ross." (Doc. No. 61-1 at 3.) This document appears to confirm that the officer has a last name of Alberts and a first name of Ross. Thus, Defendants' representation to the Court that the officer is Ross Alberts appears consistent with the record as of March 19, 2021, when Plaintiff's Amended Complaint was due.

fact, prevented taking action to effectuate service. As discussed above, this Court had

already attempted to assist Plaintiff with serving "Officer Hendrikt" and "Alberts Ross,"

as originally identified; however, Ramsey Country flagged the defects complicating

service of the individuals as named. After that, consistent with this Court's Report and

Recommendation, Ramsey County disclosed the correct names of the individuals

Plaintiff might be referring to. It was up to Plaintiff to take the next step. But when

invited to name those individuals in an Amended Complaint, Plaintiff's filings

communicated a lack of acceptance that Tanner Hendrikson and Ross Alberts were the

individuals who should be sued. Based on the position Plaintiff took as of May 5 and 6,

2021, this Court was therefore not in a position to direct service on individuals whom

Plaintiff himself would not accept as the proper defendant parties. *See Martin v. Serrell*,

No. 4:03CV3130, 2006 WL 488718, *1 (D. Neb. Feb. 27, 2006) ("The court does

everything it can legitimately do, within the court's power, to assist pro se prisoner

plaintiffs proceeding in forma pauperis to accomplish service of process . . . However, the

court cannot become an advocate for, or agent of, either side of a case."); *Skaggs v.

Clark*, No. CIV. A. 3:13-3293, 2015 WL 269154, *3 (S.D. W. Va. Jan. 21, 2015) (noting

that the court is responsible for service of process on behalf of a plaintiff who is

proceeding in forma pauperis, but that "requirement . . . does not transform the court into

an advocate for Plaintiff.")

      Plaintiff's own lack of the addresses for Hendrikson and Alberts did not get in the

way when the Court was prepared to assist Plaintiff if he chose to proceed by clarifying

only the names of Defendants who had been previously identified as "Officer Hendrikt"

30

and "Alberts Ross." *See*, *e.g.*, *Lee*, 991 F.2d at 489; *Mendez*, 2021 WL 6112398 at *3 (noting that the plaintiff must give the court sufficient service information and cannot simply insist that information originally provided was correct if the court could not accomplish service with that information).[10] Had Plaintiff filed an Amended Complaint naming Tanner Hendrikson and Ross Alberts as defendants, this Court would have acted to seek waivers of service, and then to locate the defendants via the United States Marshals Service, as necessary. Under the circumstances, this Court does not find good cause when Plaintiff's failure to remedy the defect that precluded service with an amended complaint. *See Haggins*, 2014 WL 772600 at *9 (noting that there is no good cause if plaintiff had ample time to remedy a service defect and he did not do so).

Based on the foregoing analysis, this Court recommends that the claims against "Officer Hendrikt" and "Ross" be dismissed *without* prejudice.

### D.   Summary

In sum, there is only one viable claim remaining in this lawsuit. The record demonstrates a genuine dispute of material fact as to the nature and constitutionality of

---

[10]      On September 21, 2021, Plaintiff appeared to withdraw his position that his original complaint and Amended Complaint correctly named the individuals he wished to sue as "Officer Hendrikt" and "Alberts Ross," but now argues that he could not serve Tanner Hendrikson and Ross Alberts without Plaintiff personally receiving their contact information. (Pl.'s Mem. 1–11.) Plaintiff's belated argument is unavailing and sidesteps the previous Court's orders. As was explained in this Court's adopted Report and Recommendation on summary judgment, this Court recognized this Court's obligation to effectuate service. (Doc. No. 55 at 20.) And the Court made it clear in the February 26, 2021 Order that all Plaintiff needed to do was file a timely amended complaint clarifying the names of the defendants he intended to sue. (Doc. Nos. 58, 59.)

the alleged encounter on December 30, 2015, when Plaintiff alleges that Defendant Paul inappropriately touched him during a strip search.

This Court finds that it is appropriate to recommend dismissal of or summary judgment on all other aspects of this case.

Summary judgment is recommended on the claims against supervisory Defendants Rodriguez, Bostrom, and Paget because Plaintiff did not plead that these individuals had personal direct involvement with the incidents of alleged harm, and he did not provide enough evidence to establish that these defendants were on notice of a pattern of wrongs or that they failed to take remedial action and thus caused him harm. These defendants are entitled to qualified immunity because Plaintiff did not establish that their conduct violated a clearly established right. Summary judgment is recommended on the deliberate indifference to medical needs claim because it is not targeted at any individual actors and the medical records tendered by Defendants suggest that Plaintiff received mental health care appointments on more than one occasion. Summary judgment is recommended on the state law claims because the claims are untimely or are not supported by Minnesota law.

Finally, as to Defendants Ross Alberts or Albert Ross and Hendrikt or Tanner Hendrickson, this Court endeavored to assist Plaintiff in the proper identification of these parties so that service could be effectuated in a timely fashion. Plaintiff failed to submit a timely amended complaint as was permitted to further these efforts, and this Court recommends dismissal of the claims against these parties without prejudice.

In reaching these recommendations, this Court thoroughly considered and reviewed all the briefs and documentary evidence submitted throughout the course of the litigation.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      The Defendants' Second Motion for Summary Judgment (Doc. No. 65) be **GRANTED IN PART** and **DENIED IN PART**.

2.      Summary judgment be **GRANTED** in favor of Defendants Rodriguez, Paget, and Bostrom because they are entitled to qualified immunity.

3.      Claims against Defendants Hendrikt and Ross be **DISMISSED** without prejudice for failure to serve the defendants.

4.      Summary judgment be **DENIED** as to Defendant Paul because there is a genuine dispute of material fact.

5.      Summary judgment be **GRANTED** as to Claim 2 alleging a violation of Policy 103.220 because the claim is not legally cognizable under 42 U.S.C. § 1983.

6.      Summary judgment be **GRANTED** as to the claim regarding the Minnesota Human Rights Act in Claim 3, and as to Claim 4, because there is no basis in Minnesota law for any of the state law claims to proceed.

Dated: January 21, 2022                                    *s/ Becky R. Thorson*
                                                           BECKY R. THORSON
                                                           United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).